OPINION
 "ASSIGNMENT OF ERROR
 Whether the trial court erred in finding that Lucas County Children Services should be granted permanent custody of the child."
The record shows that LCCS filed a complaint in dependency with a request for permanent custody of the minor child on June 3, 1997. LCCS also requested a shelter care hearing. On the same day the complaint was filed, a magistrate granted LCCS temporary custody of Ashley S.
On September 3, 1997, after holding hearings, the trial court filed a judgment entry in which it adjudged the child dependent, and made the dispositional order that LCCS be granted permanent custody of the child. Appellants filed their notice of appeal on September 25, 1997.
Appellants argue in support of their sole assignment of error, that there was no clear and convincing evidence to support the trial court's conclusion that the best interests of Ashley S. required a grant of permanent custody of Ashley S. to LCCS. Appellants contend that when the factors of R.C. 2151.414(D) are considered in this case, it is clear the trial court should not have granted permanent custody.
R.C. 2151.414(D) contains the factors a trial court should consider to decide whether a child's best interests are met by an order for permanent custody. R.C. 2151.414(D) provides, in pertinent part:
 "(D) In determining the best interest of a child at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) or (5) of section 2151.353 [2151.35.3] or division (C) of section 2151.415
[2151.41.5] of the Revised Code, the court shall consider all relevant factors, including, but not limited to, the following:
 "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child;
 "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
"(3) The custodial history of the child;
 "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency."
Appellants first argue that the recommendation of the guardian ad litem in this case, that LCCS be granted permanent custody of the child, was wrong. They state that the guardian had an "apparently limited role in the child's life."
The guardian's written recommendation showed that she based her opinion upon several factors that she learned in the course of her investigation in this case. For instance, she learned that LCCS had previously provided a full range of services to Linda S. in an attempt to reunite her with three children she had before she gave birth to Ashley S. Despite the diligent efforts of LCCS, Linda S. was unable to overcome her problems and the court granted permanent custody of the three older children to LCCS. The same problems that resulted in the removal of the three older children from the custody of Linda S. were still present at the time of the hearing. Linda S. was again in an abusive relationship, still lacked stable housing, and still was not able to place the needs of her child first. Linda S. left the hospital six hours after giving birth to Ashley S. and did not return to visit the child. Instead, she focused on learning more about the criminal charges filed against David S. for his part in assaulting his own mother.
At the time the guardian ad litem submitted her written recommendations, Linda S. was already sentenced to serve three years in prison after pleading no contest to charges that she assaulted David S.'s mother. The guardian ad litem noted that both Linda and David had criminal histories, and had problems with domestic violence.
We do not find it fatal that the guardian ad litem had a limited role in the life of the child in this case, since the child was an infant who was unable to provide much insight or input regarding her wishes regarding placement. The guardian adlitem explained the basis for her opinion, and the trial court was in the best position to evaluate the weight that should be assigned to her opinion.
Appellants next focus on the requirement that the trial court consider the child's need to be in a legally secure and permanent placement when determining the best interest of the child. Appellants argue that even though both had been sentenced to prison terms of three years or more for an assault on David S.'s mother, the trial court failed to consider the possibility that one or both of them might be granted shock probation, and might therefore be in a position to take care of their child.
The record shows that testimony was given regarding whether or not it was probable that either appellant would be granted shock probation. While witnesses acknowledged that it was possible that either appellant could be granted shock probation, the unanimous consensus of those who testified on the issue was that it was not probable that either appellant would be granted shock probation. The trial judge stated his opinion that it was not probable that either appellant would get shock probation when he verbally announced his decision to grant permanent custody of the child to LCCS. Accordingly, the trial court did consider the shock probation issue and found that in this case the possibility of shock probation was so remote, it was not a viable factor.
Finally, appellants discount the testimony of a psychologist that he believed neither appellant was equipped to be a good parent. They argue that the psychologist was not equipped to reach that conclusion because he never observed either of them interact with their child.
Once again, the trial court was fully informed of the basis of the psychologist's conclusion. The psychologist's testimony shows that he was aware that Linda S. had a history of abusive relationships and that even though she had received counseling and training, her pattern of being involved with abusive relationships continued to the time of the hearing.
The record also shows that the psychologist knew that David S. had a record for committing domestic abuse. He was in a counseling group for the problem when he and Linda S. beat his mother so severely she had to be hospitalized for five weeks.
The psychologist stated that he was pessimistic that either appellant could overcome their problems associated with domestic abuse, based upon the history of the appellants and his own assessment of them following meetings with them. Therefore, he believed they were not fit to be parents to any child.
The basis of the psychologist's opinion did not require him to actually observe any interaction between appellants and their child. The trial court was in the best position to evaluate the value of the psychologist's opinion.
We note that testimony was presented to the trial court that an aunt and uncle, who have cared for Ashley S. since Ashley S. was discharged from the hospital following her birth, are willing to adopt Ashley S. Accordingly, the record shows that Ashley S. is adoptable. The record contains clear and convincing evidence upon which the trial court could rely to find that all the factors were proved to show it was in the best interest of Ashley S. to grant LCCS permanent custody of her. This court affirms the decision of the trial court. Appellants' sole assignment of error is not well-taken.
The decision of the Lucas County Court of Common Pleas, Juvenile Division, is affirmed. Appellants are ordered to pay the court costs of this appeal.
JUDGMENT AFFIRMED.
Peter M. Handwork, P.J.
 James R. Sherck, J.
 Richard W. Knepper, J.
CONCUR.